**S. BUCHSBAUM & CO. v. BEMAN,**
Regional Director, et al.

No. 15029.

District Court, N. D. Illinois, E. D.

April 15, 1936.

446

Theodore Stone and Charles C. Kirk, both of Chicago, Ill., for plaintiff.

G. L. Patterson, of Detroit, Mich., Robert B. Watts, of New York City, and Charles Fahy, of Washington, D. C., for defendants.

WILKERSON, District Judge.

Plaintiff has moved for a temporary injunction to restrain the defendants from attempting to enforce against it the provisions of the National Labor Relations Act (July 5, 1935, c. 372, §§ 1–16, 49 Stat. 449–457 [29 U.S.C.A. §§ 151–166]).

The averments of the bill in substance are: Plaintiff is a manufacturer of jewelry in Chicago. Some of the raw material used by it is brought in from other states and some of its product is sold to customers in other states. None of its employees connected with this labor controversy are engaged in either the purchase of raw material, the sale of manufactured products or the transportation of either in interstate commerce. During August, 1935, plaintiff became involved in a controversy with some of its employees, who insisted on the closed shop and the acceptance of Jewelry Workers Local No. 4 as the sole representative of the employees for collective bargaining. A strike was the result. A charge was filed with the Regional Director of the Labor Board against the plaintiff by representatives of the union, and without notice the Board issued a complaint against plaintiff which it is required by the rules of the Board to answer. The hearing set for February 5, 1936, has been postponed pending the hearing on the application for an injunction.

The complaint charges:

In August, 1935, plaintiff discharged some of its employees and refused to recognize or rehire them because they had joined Jewelry Workers Local No. 4 for the purpose of collective bargaining. The refusal to rehire such employees was discrimination and an unfair labor practice within the meaning of section 8, subsec. 3, of the National Labor Relations Act, 29 U.S.C.A. § 158 (3). Plaintiff's production workers constitute a unit appropriate for collective bargaining and prior to August 6, 1935, a majority of those employees had designated Union No. 4 as their representative for the purpose of collective bargaining, and since that time the union has been the representative of the employees for that purpose. In August, 1935, a request was made through the union that plaintiff bargain collectively with respect to wages and working conditions. This the plaintiff refused to do, and such refusal was the direct cause of the strike, and constitutes an unfair labor practice within the meaning of section 8, subsec. 5, of the act, 29 U.S.C.A. § 158 (5). The acts of the plaintiff are in violation of the rights guaranteed to them by section 7 of the act (29 U.S.C.A. § 157), and constitute an unfair labor practice within the meaning of section 8, subsec. 1, of the act (29 U.S.C.A. § 158 (1). The acts described occur in commerce and burden and obstruct such commerce and lead to labor disputes burdening and obstructing such commerce and the free flow thereof.

The bill further avers:

Plaintiff was served with a copy of the complaint and notified that a hearing would be had in accordance with the rules of the Board, and that plaintiff had a right to file its answer to the complaint in accordance with such rules. Unless the complaint is answered, its averments are deemed by the Board to be admitted. The Board has threatened and intends to intrude into plaintiff's factory, examine its books and interview its employees. The Board threatens and intends to compel by subpœna, the attendance of employees as witnesses and the production of books. The Board has threatened and intends to restore discharged employees to work and to award them back pay, and put plaintiff to great expense in preparing for attending hearings and in paying fees and mileage of witnesses. Plaintiff will be injured by taking employees away from their work to

testify at the hearing. If plaintiff resists an examination of its books, it is subject to a fine of $5,000, and its officers are subject to imprisonment for a year. Plaintiff cannot prevent the attendance at the hearing of employees as witnesses who will be required to divulge confidential information as to its business. The pendency of the complaint and the continuance of the suit will bring odium upon the plaintiff and disrupt its harmonious relations with its employees. The publicity attending the proceedings will injure the business of plaintiff irreparably, even if no attempt is made to enforce the orders of the Board.

It is charged that the act is wholly unconstitutional because it violates (a) the Fifth Amendment, as to due process of law; (b) sections 1 and 2 of article 3 by denying to the courts the right to determine issues upon their own records and the facts elicited before them; (c) section 8 of article 1 and the Ninth and Tenth Amendments; (d) the Seventh Amendment, as to jury trial.

As a ground for invoking injunctive relief, it is asserted that as the act is wholly void, plaintiff cannot seek relief in accordance with its provisions; that to attempt to get relief under the provisions of the act would involve plaintiff in a multiplicity of suits; that the court review provided in the act with reference to orders of the Board is incomplete and inefficient.

■ In considering this motion, it is to be observed at the outset that an inferior court is asked to interfere by injunction with the administrative acts of an agency of the federal government. In such a case it is of the greatest importance that the rules by which the court is limited in granting relief of the kind here sought should be strictly observed.

■ Even if there were no doubt as to the unconstitutionality of a statute, that of itself is not a sufficient ground for equitable relief against its enforcement. It must be made to appear that plaintiff is suffering from or being threatened with some injury which cannot be adequately remedied unless an injunction is granted. Boise Artesian Water Co. v. Boise City, 213 U.S. 276, 285, 29 S.Ct. 426, 53 L.Ed. 796; Truax v. Raich, 239 U.S. 33, 38, 36 S.Ct. 7, 60 L. Ed. 131, L.R.A.1916D, 545, Ann.Cas. 1917B, 283; Frothingham v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078; Terrace v. Thompson, 263 U.S. 197, 214, 44

S.Ct. 15, 68 L.Ed. 255; Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322.

■ Every possible presumption is in favor of the validity of the statute, and this continues until the contrary is shown beyond a rational doubt. In no doubtful case should a legislative act be pronounced contrary to the Constitution. One branch of the government cannot encroach upon the domain of another without danger. The safety of our institutions depends upon a strict observance of this salutary rule. Sinking Fund Cases, 99 U.S. 700, 718, 25 L.Ed. 496; Nicol v. Ames, 173 U.S. 509, 514, 19 S.Ct. 522, 43 L.Ed. 786; Fairbank v. United States, 181 U.S. 283, 287, 288, 21 S.Ct. 648, 45 L.Ed. 862.

■ In passing upon questions of constitutionality, the court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided. As between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, it is the plain duty of the court to adopt the one which will save the act. Panama Railway Co. v. Johnson, 264 U.S. 375, 390, 44 S.Ct. 391, 68 L.Ed. 748; Blodgett v. Holden, 275 U.S. 142, 148, 48 S.Ct. 105, 72 L.Ed. 206; Lucas v. Alexander, 279 U.S. 573, 577, 49 S.Ct. 426, 73 L.Ed. 851, 61 A.L.R. 906.

■ The remedy provided by the statute must be invoked unless that remedy is inadequate or the statute is wholly void. Resort to equity may not be had merely because of an anticipation of improper or invalid action in administration. Continental Baking Co. v. Woodring, 286 U.S. 352, 369, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402, and cases cited.

The main objections to this statute on constitutional grounds will be simplified when the statute and the bill of complaint are examined in the light of the elementary rules just stated.

*1. Interstate and Intrastate Commerce.*

■ The power of the Board is expressly limited by the statute, section 10 (a), 29 U.S.C.A. § 160 (a), to preventing unfair labor practices affecting commerce. The term "affecting commerce" is defined, section 2 (7), 29 U.S.C.A. § 152 (7), to mean "in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor

dispute burdening or obstructing commerce or the free flow of commerce."

The term "commerce" is defined, section 2 (6), 29 U.S.C.A. § 152 (6), to mean "trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State, but through any other State or any Territory or the District of Columbia or any foreign country."

The act in this respect differs essentially from the National Industrial Recovery Act (48 Stat. 195), of which it was said (Schechter Poultry Corporation v. United States, 295 U.S. 495, 542, 55 S.Ct. 837, 848, 79 L.Ed. 1570, 97 A.L.R. 947) "although the validity of the codes (apart from the question of delegation) rests upon the commerce clause of the Constitution, section 3 (a) of the act (15 U.S.C.A. § 703 (a) is not in terms limited to interstate and foreign commerce."

Sections 7 and 8 (2) of the National Labor Relations Act, 29 U.S.C.A. §§ 157, 158 (2), are substantially the same as these which were under consideration in Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. We are obliged to conclude, therefore, that the act is not to be pronounced wholly void on its face because Congress has attempted the regulation of something which it is beyond its power to regulate. If the Board is attempting to regulate transactions which are intrastate in their character, the remedy is by the appeal to the courts from the order of the Board in the method prescribed in the act. Continental Baking Co. v. Woodring, supra.

## 2. The Fifth Amendment.

 Sections 7, 8, and 9 of the act, 29 U.S.C.A. §§ 157–159, particularly sections 8 (5) and 9 (a) of the act, 29 U.S.C.A. §§ 158 (5), 159 (a), are challenged on the ground that they destroy the right of personal liberty, and the right of property of employers and employees in connection with contracts relative to the services of the employees. Section 8 (5) makes it an unfair labor practice "to refuse to bargain collectively with the representatives of

* * * employees." Section 9 (a) provides: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer."

It is urged that the effect of the above provisions, when read in connection with section 9 (b), 9 (c) and section 13 (the one preserving to employees the right to strike) of the act, 29 U.S.C.A. §§ 159 (b, c), 163, is to coerce employers into the acceptance of the terms offered by the representatives of the employees, and thereby to destroy liberty of contract between employer and employee.

This is not a reasonable construction of the language under consideration. It has been pointed out that if it is reasonably possible to do so a statute must be given the construction which will save its validity. The sections under consideration must be read in connection with the provisions of section 10 of the act, 29 U.S.C.A. § 160. The criminal provisions of section 12, 29 U.S.C.A. § 162, under the well-established rule, may not be given an application beyond the plain language of the statute. Criminal penalties are not provided for the unfair labor practices denounced by section 8, 29 U.S.C.A. § 158. The method of enforcing orders of the Board is the one provided in section 10. Acts of the Board pursuant to section 9 (a), 9 (b), and 9 (c) may be made effective only by proceedings under section 10. The penalties of section 12 are expressly limited to those who "willfully resist, prevent, impede, or interfere with any member of the Board or any of its agents or agencies in the performance of [their] duties."

 In construing statutes, we try to ascertain the intent of Congress from the history of the legislation.

The Senate Committee on Education and Labor said: "The Committee wishes to dispel any possible false impression that this bill is designed to compel the making of agreements or to permit governmental supervision of their terms. It must be stressed that the duty to bargain collec-

tively does not carry with it the duty to reach an agreement, because the essence of collective bargaining is that either party shall be free to decide whether proposals made to it are satisfactory." Senate Report No. 573, Senate Committee on Education and Labor, 74th Cong., 1st Sess., May 2, 1915, p. 12.

■ There are other provisions of the act than those relating to collective bargaining. Even if plaintiff's view as to the portions of the act relative to collective bargaining were accepted, that would not invalidate the entire act, and the plaintiff would not be relieved from its duty to pursue the remedy provided by the statute. If the Board should make an order, the coercive effect of which in the circumstances would be to deprive either employer or employee of liberty of contract, the violation of constitutional rights can be prevented by a direct attack upon the order in accordance with the provisions of section 10.

### 3. Adequacy of Court Review.

The provisions relative to appeals from orders of the Board and to suits to enforce those orders are similar to those of the Federal Trade Commission Act (15 U.S.C.A. § 41 et seq.). Many of the objections made to the act under consideration are stated and disposed of in Arkansas Wholesale Grocers' Ass'n v. Federal Trade Commission (C.C.A.) 18 F.(2d) 866, 870, 871.

■ It is urged that there is no right of appeal from the decisions of the Board made under section 9 (a), 9 (b), and 9 (c). Those sections, however, must be read in connection with section 10.

The constitutional objections to particular procedural provisions may be disposed of by a quotation from Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303, 54 A.L.R. 1016. The court said: "But where the equitable remedy of injunction is sought, as it is here, not upon the ground of a present infringement or denial of a specific right, or of a particular injury in process of actual execution, but upon the broad ground that the mere existence and threatened enforcement of the ordinance, by materially and adversely affecting values and curtailing the opportunities of the market, constitute a present and irreparable injury, the court will not scrutinize its provisions, sentence by sentence, to ascertain by a process of piecemeal dissection whether there may be, here and there, provisions of a minor character, or relating to matters of administration, or not shown to contribute to the injury complained of, which, if attacked separately, might not withstand the test of constitutionality. In respect of such provisions, of which specific complaint is not made, it cannot be said that the landowner has suffered or is threatened with an injury which entitles him to challenge their constitutionality. Turpin v. Lemon, 187 U.S. 51, 60, 23 S.Ct. 20, 47 L.Ed. 70. In Railroad Commission Cases, 116 U.S. 307, 335–337, 6 S.Ct. 334, 388, 1191, 29 L.Ed. 636, this court dealt with an analogous situation. There an act of the Mississippi Legislature, regulating freight and passenger rates on intrastate railroads and creating a supervisory commission, was attacked as unconstitutional. The suit was brought to enjoin the commission from enforcing against the plaintiff railroad company any of its provisions. In an opinion delivered by Chief Justice Waite, this court held that the chief purpose of the statute was to fix a maximum of charges and to regulate in some matters of a police nature the use of railroads in the state. After sustaining the constitutionality of the statute 'in its general scope' this court said: 'Whether in some of its details the statute may be defective or invalid we do not deem it necessary to inquire, for this suit is brought to prevent the commissioners from giving it any effect whatever as against this company.' Quoting with approval from the opinion of the Supreme Court of Mississippi, it was further said: 'Many questions may arise under it not necessary to be disposed of now, and we leave them for consideration when presented.' And finally: 'When the commission has acted and proceedings are had to enforce what it has done, questions may arise as to the validity of some of the various provisions which will be worthy of consideration, but we are unable to say that, as a whole, the statute is invalid.'" (Italics mine.)

### 4. Irreparable Injury.

■ The decisions made by the Board under section 9 (a), 9 (b), and 9 (c), 29 U.S.C.A. § 159 (a–c), are not threatened injury of the kind which equity will enjoin. United States v. Los Angeles & S. L. R. Co., 273 U.S. 299, 314, 47 S.Ct. 413, 71 L.Ed. 651.

The authority of the Board to inspect books must be read in connection with the provisions as to subpœnas. The power to punish for disobedience of the subpœnas issued by the Board is in the courts where there is judicial protection against invasion of constitutional rights.

Plaintiff urges that it will suffer irreparable injury because of the expense of the hearing before the Board, the interruption to its business due to absence of employees as witnesses; the odium brought upon it by the publicity of the proceedings, and the disruption of amicable relations with its employees.

This is not injury of the kind which will warrant the court in enjoining the proceedings under the statute. United States v. Illinois Central R. Co., 244 U.S. 82, 85, 37 S.Ct. 584, 61 L.Ed. 1007; United States v. Los Angeles R. Co., 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651; Pennsylvania R. Co. v. United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536; Chamber of Commerce of Minneapolis v. Federal Trade Commission (C.C. A.) 280 F. 45.

In exercising its discretion in cases like this the court should not overlook the broader aspects of injunctive relief against administrative officers. Of course, the court should not hesitate to grant relief where the disregard of constitutional rights is clear and the threatened injury is direct and substantial. The case before the court, however, does not measure up to that standard. The threatened injury is too remote and speculative to warrant interference by injunction.

*5. Penal Provisions of Section 12.*

It is sufficient to say that there is no averment of a specific threat to enforce that section. Moreover, the Board has no power to prosecute under section 12, 29 U.S.C.A. § 162, and the officers of the United States charged with the duty of enforcing the laws are not parties to this proceeding.

6. The Circuit Courts of Appeals for the Fifth,[1] Sixth[2] and Ninth Circuits[3] have refused applications for injunctions pending appeal in similar cases. Most of the District Courts to which applications for injunctions have been made have denied them. The attention of the court has been called to opinions by Judges Bondy,[4] Adkins,[5] and Martin,[6] who reached the same conclusion as that reached in this case.

Findings may be prepared in accordance with the equity rule.

Motion denied.

---

[1] Bradley Lumber Company v. National Labor Relations Board (no opinion filed).

[2] Bemis Bros. Bag Company v. Feidelson (no opinion filed).

[3] Carlisle Lumber Co. v. Hope, 83 F. (2d) 92.

[4] Associated Press v. Herrick, 13 F. Supp. 897.

[5] Supreme Court, District of Columbia.

[6] Bemis Bros. Bag Co. v. Feidelson, 13 F.Supp. 153.